**BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN (now known as United Transportation Union), Plaintiff-Appellee,**

v.

**INDIANA HARBOR BELT RAILROAD COMPANY, Defendant-Appellant.**

**No. 18869.**

United States Court of Appeals, Seventh Circuit.

April 3, 1972.

Richard A. Walkovers, Chicago, Ill., for defendant-appellant.

Burke Williamson, Jack A. Williamson, Chicago, Ill., for plaintiff-appellee; Adams Williamson & Turney, Chicago, Ill., of counsel.

Before KNOCH, Senior Circuit Judge, and KERNER and PELL, Circuit Judges.[1]

KNOCH, Senior Circuit Judge.

This matter grew out of a Complaint filed by plaintiff-appellee, Brotherhood of Locomotive Firemen and Enginemen (now known as United Transportation Union), seeking, inter alia, injunction against defendant-appellant, Indiana Harbor Belt Railroad Company, in which the Union asserted that Indiana Harbor violated an "understanding" between the parties, commonly called the "Home Terminal Agreement", by transferring ten firemen from one terminal to another.

The District Judge, being of the opinion that this was not, as the Union con-

---

1. Judge Kerner heard oral argument, but did not participate in the adoption of this opinion.

tended, a major dispute, but a minor dispute (properly a subject for a special adjustment board pursuant to the provisions of the Railway Labor Act, Title 45 U.S.C. § 153 second) removed the cause from his calendar with leave to the Union to reinstate it, if appropriate, at a later time.

The Union and Indiana Harbor agreed to submit their dispute to binding arbitration under the Act. Special Board of Arbitration No. 128 was formed and it received written statements from both sides, after which it issued its ruling "Award No. 1."[2] When the Union

2.

Public Law Board No. 128.
Award No. 1.
Parties to Dispute
Brotherhood of Locomotive Firemen and Enginemen
vs.
Indiana Harbor Belt Railroad

Statement of Claim:

The employees' protest against the carrier moving, on May 29 and May 30, 1967, ten (10) demoted engineers or qualified firemen, working as firemen, from their designated home terminal at Norpaul Yard to Blue Island Yard.

Findings:

The Board, upon the whole record and all the evidence, finds that the parties herein are carrier and employe within the meaning of the Railway Labor Act, as amended, and that this Board has jurisdiction.

On May 29 and 30, 1967, the Carrier blanked certain firemen's jobs at Norpaul, one of the Carrier's terminals and notified the ten junior firemen to report at Blue Island, another terminal. All such firemen were protected men under provisions of the Award of Arbitration Board 282. On this Carrier, there is only one seniority district encompassing all terminals. The ten firemen moved from the working list at Norpaul to the working list at Blue Island were not the ten most junior men on the firemen's seniority roster.

The carrier contends that by Article 27 of the Firemen's Agreement it is permitted to send firemen from one terminal to another; and, further, that the terms of the Award of Arbitration Board 282 gave the Carrier the right to determine what jobs for firemen could be blanked and what jobs would be available for protected employees. To this we agree; but, we find nothing in the Award that has the effect of eliminating seniority rules governing protected employees. Judge Holtzoff, in his decision of September 7, 1966, found the Carrier had the right to abolish positions as they choose and to transfer a protected fireman from one position to another. But in doing so; "The order of seniority must be followed by the Carrier. They may not select a particular fireman at random and transfer him irrespective of his seniority."

The Organization contends that the Home Terminal Agreement, effective August 1, 1965, established home terminals for firemen and when a terminal has been selected by a fireman it could not be changed except as provided in that Agreement. The August 1, 1965 Agreement permits the fireman qualified as an engineer to select a terminal where he would work as an engineer when his seniority permits, and to work as a fireman so long as his seniority as a fireman permits. We find, however, that when the Carrier, without negotiation and agreement, unilaterally assigned firemen from Norpaul to Blue Island without reference to their standing on the firemen's seniority, roster it was in violation of Article 26 of the current Agreement.

Award: Protest sustained.

/s/ Robert O. Boyd
    Robert O. Boyd, *Chairman*

/s/ Robert Brown
    *Carrier Member*
        (Per attached Opinion)

/s/ M. A. Ross
    *Employee Member*
        (Per attached Opinion)

Public Law Board No. 128
Chicago, Illinois
April 2, 1968

sought interpretation of that Award, the Board replied that it was "clear." [3] The award seems clear and unambiguous to this Court. However, the Union moved to reinstate and to amend its Complaint to include a petition to enforce or review the Award. Other motions and affidavits were filed by both parties, which we need not detail here. The Union ultimately moved for summary judgment to enforce the Award.

The "Home Terminal Agreement" which was embodied in a "Memorandum of Understanding" [4] effective August 1,

3.

Public Law Board No. 128.
Interpretation Award No. 1.

Parties to Dispute:

Brotherhood of Locomotive Firemen and Enginemen,

*vs.*

Indiana Harbor Belt Railroad.

On April 29, 1968, the Organization made a request pursuant to Paragraph "i" of the Agreement establishing Public Law Board No. 128. Subsequently, on June 13, 1968, the Board was reconvened for the purpose of hearing argument in respect to the request.

The sole issue presented to the Board Case No. 1 for decision is set forth in the "Statement of Claim" and reads as follows:

"The employees' protest against the carrier moving on May 29 and May 30, 1967, ten (10) demoted engineers or qualified firemen, working as firemen, from their designated home terminal at Norpaul Yard to Blue Island Yard."

The award was "Protest sustained" and is premised on the finding which reads:

"We find, however, that when the carrier, without negotiation and agreement, unilaterally assigned firemen from Norpaul to Blue Island without reference to their standing on the firemen's seniority roster it was in violation of Article 26 of the current agreement."

There is nothing ambiguous or uncertain in this language of the findings. An interpretation of an award may be made where there is patent ambiguity in the "Award." Where there is no ambiguity an interpretation may not properly be made. In my opinion the award is clear, and to expand upon it might be an intrusion into collateral issues which, when raised may be determined by other tribunals.

I have therefore concluded that the request for an interpretation of Award No. 1 of Board 128 must be declined.

/s/ Robert O. Boyd,
Robert O. Boyd, *Chairman*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*Carrier Member*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*Employee Member*
Public Law Board No. 128.

4. Memorandum of Understanding between the Indiana Harbor Belt Railroad Company, The New York Central Railroad, and their employees represented by the Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen, with respect to promotion and reduction in force rule

WHEREAS the labor organization parties to this agreement have requested that an understanding be arrived at with respect to the promotion of firemen to engineer and the demotion of engineers to firmen;

IT IS AGREED:

1. Engineers and firemen qualified as engineers will, no later than August 1, 1965, indicate in writing to the designated officer of the Carrier, with a copy to the Local Chairman of their organization, the terminal of their choice as engineers. No engineer or fireman qualified as engineer will be permitted to change terminal after the original designation on August 1, 1965, unless writ-

1965, which was a supplement to the collective bargaining agreement in force between the Union and Indiana Harbor, allowed each engineer and firemen qualified to work as an engineer to designate one of the Indiana Harbor terminals as

ten notice is furnished the designated officer of the Carrier ten days in advance of the date change is to be made.

For the purposes of this agreement the terminals.are:
> Franklin Park (Norpaul and Argo, Illinois)
> Blue Island, Illinois
> Gibson, Indiana
> Lyons Yard (Danville, Illinois)

2. If an employee fails to submit an original bid as specified in the above Item 1, Carrier and the organization will designate such terminal and employee will remain at that terminal until he makes election in accordance with the provisions of said Item 1.

3. In the event there are not sufficient engineers or firemen qualified as engineers to fill vacancies at a terminal or terminals, sufficient engineers and/or firemen qualified as engineers will be added to the engineers' extra board at that terminal or terminals by promoting or setting up the senior demoted engineer and/or firemen qualified as engineer at the terminal where such vacancies arise.

4. In the event there is no available demoted engineer or fireman qualified as an engineer at a terminal, the junior available demoted engineer or fireman qualified as an engineer at any other terminal(s) except Lyons Yard will be. promoted (set up) and required to work at such terminal, when and where needed.

5. It is understood that no senior demoted engineer will be in active service as a fireman at any terminal when there is a man his junior in active service as an engineer at the specific terminal unless it is agreed upon by the Carrier and one of the organizations party hereto.

6. A demoted engineer may exercise seniority as an engineer at any terminal where a junior engineer is in engineer service only as provided in Item 1.

7. In the application of this agreement, it is understood that the engineers' extra board at each of the terminals listed in Item 1 will be adjusted independently commensurate with the requirements of the service at each such terminal.

8. Each tour in engineer service will be utilized as one of the starts in computing the twenty-two starts for monthly work period referred to in agreement between the BLF & E and the Indiana Harbor Belt Railroad dated January 31, 1958, providing for a monthly work period of twenty-two starts for firemen. This Item 8 is applicable on the IHB only.

IT IS FURTHER AGREED that in the application of this understanding, it will not result in any additional expense to the Carrier or Carriers, and it is not the purpose or intent of this understanding that there be a combination of the schedule or rules or working agreements of the two organizations and this understanding is solely and only for the purpose as agreed to above, and it is not otherwise implied or intended that this Memorandum of Understanding is in any way to change the rules or regulations of the general agreements of either organization with the Carrier(s), or change, alter, or cancel any regulations with respect to the operation and regulation of the crew boards of either the engineers or firemen. This Memorandum of Understanding will be effective August 1st 1965, and will be for a trial period of ninety days and should it prove satisfactory, to all parties, it will be made permanent after the ninety day trial period and thereafter subject to revision or cancellation as provided for in the Railway Labor Act as amended.

Signed at Hammond, Indiana, this 12th day of July 1965.

FOR THE BROTHERHOOD OF LOCOMOTIVE ENGINEERS:
/s/ C. J. Shear
General Chairman

FOR THE BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN:
/s/ R. L. Lewman
General Chairman

FOR THE INDIANA HARBOR BELT RAILROAD COMPANY:
/s/ C. B. Fleming
General Manager

FOR THE DANVILLE SUBDIVISION, SOUTHERN DISTRICT, NEW YORK CENTRAL RAILROAD:
/s/ R. B. Hasselman
General Manager

a "home" terminal to which he would report to begin and end his tour of duty. This understanding provided that where there were insufficient engineers or firemen qualified as engineers to fill vacancies at a particular terminal, others so qualified would be added by promotions at the terminal where the vacancies arose, and if there were no such qualified personnel at that terminal, then the junior available qualified personnel at another terminal would be required to work when and where needed.

It was further specifically provided that operation of this understanding was not to result in additional expense to Indiana Harbor. Yet in May, 1967, according to the affidavit of Indiana Harbor's Assistant General Manager, there were about three 8-hour switching assignments at the Norpaul terminal where a majority of the firemen assignments averaged 12 hours per day, while the Blue Island terminal had about twenty-five 8-hour assignments, many of which were not filled. Because of overtime payments to firemen at Norpaul, Indiana Harbor incurred substantial additional operating expense.

Accordingly, on May 29, and May 30, 1967, Indiana Harbor transferred the ten firemen here involved, from Norpaul to Blue Island by abolishing ten firemen assignments at Norpaul and ordering the ten men to Blue Island. Shortly afterward, the Union filed this action.

The dispute presented to the Special Adjustment Board (as quoted in the Interpretation Award No. 1, paragraph 2 [3]) makes no reference to damages, although the Union's written statement to the Board included affidavits respecting money damages, consisting principally of increased cost of travel to Blue Island as compared to Norpaul and decreased total earnings there. Some claims for additional amounts were presented administratively to Indiana Harbor, on an allegation that the Home Terminal Agreement had been violated, but these were not carried further, and, under the provisions of the time limit in the Claims Agreement between the parties, it was

Indiana Harbor's position that these claims were not before the Board for adjudication. The Award does not refer to them.

After issuance of Award No. 1 and Interpretation Award No. 1, Indiana Harbor abolished six firemen jobs at Norpaul and allowed the six firemen affected to exercised their seniority at the other terminals, subsequently abolishing another six such jobs and allowing those firemen affected to do the same.

The District Court granted that part of the Union's motion for summary judgment relating to Indiana Harbor's right to transfer firemen from one terminal to another and ordered the affected employees restored. The District Judge denied that motion insofar as it sought damages, on the theory that these should be determined in an adversary proceeding.

The District Judge agreed with the Union that the Award directed Indiana Harbor to adhere to the Home Terminal Agreement in its assignment of engineers and firemen qualified to work as engineers. He also interpreted the Award to hold that Indiana Harbor could not abolish the jobs of those men and thus do by indirection what the Court saw as not permitted to be done directly. We do not so read the Award.

Indiana Harbor urges us to review not only the injunctive portion of the District Court's Order, on the ground that compliance therewith will result in irreparable damage to Indiana Harbor, but also the prior interlocutory orders denying Indiana Harbor's motion to remand to the Board and to strike the Union's affidavit filed in support of its motion for summary judgment, and further asks us to consider the issue of the propriety of the District Court's jurisdiction to determine damages. With the exception of the injunctive question, we reach none of these issues.

As we read it, Award No. 1, after setting out the statement of claim presented to it, holds (1) that the firemen at Norpaul were subject to the provisions of the earlier Award of Arbitration

**1082**

Board 282, (2) that there is only one seniority district including all the terminals here involved, and (3) that the ten men affected were not the most junior men on that single seniority roster.

The Award goes on specifically to approve and agree with Indiana Harbor's position on its right to determine which jobs to abolish, but adds that Indiana Harbor may not disregard the seniority rules by selecting a particular man at random and transferring him without regard to his seniority.

Then, the Award sets out the Union's position, but says nothing about agreeing with it. On the contrary the Board sustains the protest on a different ground: that Indiana Harbor, without negotiation and agreement, unilaterally assigned firemen from one terminal to another without reference to their standing on the seniority roster.

Accordingly, it is the conclusion of this Court that the Summary Judgment entered in favor of the Union must be reversed and this cause remanded to the District Court to enter judgment for Indiana Harbor.

Reversed and remanded with directions.